RECEIVED

JUL 1 5 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
MONROE LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| FADY MOHAMMED AALOUL | CIVIL ACTION NO. 04-2286 |
| VERSUS | JUDGE ROBERT G. JAMES |
| JOHN ASHCROFT, ET AL. | MAG. JUDGE JAMES D. KIRK |

## RULING

On July 1, 2005, this Court granted Petitioner Fady Mohammed Aaloul's ("Aaloul") Motion to Reopen based on Aaloul's assertions that he was improperly re-arrested and taken into custody by Immigration and Customs Enforcement ("ICE") following this Court's dismissal of his habeas petition. Having now received briefing by both parties and considered the evidence presented, the Court finds that an evidentiary hearing is unnecessary, and Aaloul's claims are without merit.

I.  **Procedural History**

Aaloul filed a Petition for Writ of Habeas Corpus on November 8, 2004. At the time, Aaloul was detained by ICE at the Tensas Parish Detention Center in Waterproof, Louisiana. Aaloul was ordered removed on May 17, 2004, and had been detained, at that time, since September 27, 2004. The only relief requested by Aaloul was release from detention pending removal from this country.

On April 22, 2005, Magistrate Judge James D. Kirk issued a Report and Recommendation ("First Report and Recommendation") [Doc. No. 31]. Relying on the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), Magistrate Judge Kirk

recommended in his First Report and Recommendation that Aaloul's petition be denied and dismissed with prejudice on the basis of evidence presented by Respondents showing that there was a significant likelihood that Aaloul would be removed in the reasonably foreseeable future.

However, on May 5, 2005, prior to the date Magistrate Judge Kirk's First Report and Recommendation would have been considered by this Court, Respondents filed a Notice of Release of Petitioner. In the Notice, Respondents stated that Aaloul had been placed on supervised release on April 27, 2005, and that his habeas petition should be denied as moot. Therefore, on May 19, 2005, Magistrate Judge Kirk issued another Report and Recommendation ("Second Report and Recommendation") recommending that Aaloul's habeas petition be dismissed as moot.

On June 6, 2005, this Court adopted Magistrate Judge Kirk's Second Report and Recommendation and dismissed Aaloul's habeas petition with prejudice.

On June 27, 2005, Aaloul filed a Motion to Reopen, stating that he had been re-arrested by ICE agents on June 10, 2005. He contends that the "arresting officer told [him] that he was only released to dismiss the case and it's time for him to go to detention again."

On July 1, 2005, given Aaloul's disturbing assertions, the Court re-opened Aaloul's case and referred the matter to Magistrate Judge Kirk for further proceedings. Magistrate Judge Kirk ordered Respondents to file a supplemental response to Aaloul's habeas petition by July 18, 2005. Respondents were ordered to address Aaloul's allegations regarding his re-arrest and detention. Magistrate Judge Kirk also set an evidentiary hearing for July 21, 2005.

On July 12, 2005, the Assistant United States Attorney informed the Court that Aaloul was to be deported prior to the evidentiary hearing on July 20, 2005. The Court issued a

temporary restraining order preventing Aaloul's removal from the United States and preserving the jurisdiction of the Court and the status quo in this case until such time as a hearing could be held and the Court could resolve Aaloul's claims.

On July 13, 2005, Aaloul filed a "Motion to Default" [Doc. No. 51], seeking a default judgment on the basis that it has been ninety (90) days since Respondents originally stated that his removal would take place in the reasonably foreseeable future. He contends that this fact and the fact that he was previously released by ICE shows that Respondents cannot prove that he will be removed in the immediately foreseeable future. Accordingly, Aaloul asks the Court to grant his habeas petition, order his immediate release, and grant preliminary and permanent injunctive relief preventing Respondents from "further unlawful detention" of him.

Also on July 13, 2005, Respondents filed a Motion to Dissolve Temporary Restraining Order and Dismiss [Doc. No. 52] and a Motion for Expedited Hearing [Doc. No. 53]. Respondents present evidence showing that Aaloul's original release was a bureaucratic mix-up and that specific arrangements have now been finalized for Aaloul's removal on July 18, 2005. Respondents further contend that this Court lacks jurisdiction under the REAL ID Act ("RIDA"), Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005), to enjoin or stay the execution of Aaloul's removal. Finally, Respondents contend that this Court improperly entered a temporary restraining order under the requirements of Federal Rule of Civil Procedure 65. Respondents seek to have the evidentiary hearing before Magistrate Judge Kirk moved from July 20, 2005, to July 15, 2005, to ensure that, if they prevail at the hearing, they have time to carry out Aaloul's scheduled removal.

## II. Law and Analysis

### A. Jurisdiction of Court to Enter Stay

First, the Court will address Respondents' contention that it lacks jurisdiction under the RIDA to enjoin the execution of Aaloul's removal. Respondents argue that the plain language of the RIDA places subject matter jurisdiction solely in the court of appeals on "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States," and respecting "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien." Respondents' Memorandum, pp. 7-8. On the basis of this language, Respondents contend that the Court retains jurisdiction only on challenges to the fact of detention or continuing detention and not to the lawfulness of the removal order. They further contend that Section 106(a)(3) of the RIDA, amending 8 U.S.C. § 1252(g), strips this Court of jurisdiction to enjoin the execution of removal orders.

As a matter of fact, the issue initially raised by Aaloul and the basis for re-opening his case was one of continued detention, and thus, even under Respondents' narrow reading of RIDA, the Court has jurisdiction to consider that issue. Moreover, if Respondents had engaged in some type of fraud on the Court by releasing Aaloul only to re-arrest him once his habeas petition was dismissed, it would be unfathomable that this Court could not consider appropriate action against such conduct.

More generally, neither this Court nor the Fifth Circuit Court of Appeals interprets the RIDA as narrowly as Respondents. On May 31, 2005, a memorandum was issued by the Clerk

of Court for the Fifth Circuit Court of Appeals instructing district courts on the procedures to be taken in the wake of the RIDA. The memorandum specifically instructed that, even in those cases to be transferred to the court of appeals, district courts were "to determine whether a stay [of order of imminent removal or deportation] is warranted on the merits," although a stay should not be granted automatically in every case. Additionally, in cases involving both an attack on "the order of removal, exclusion, or deportation and the fact of detention, only the portion dealing with the order removal, etc. can be transferred. The detention challenge will remain with the district court to be decided separately and the court of appeals will have no jurisdiction over that portion of the case unless and until the district court has entered a final judgment that has been appealed."

On July 8, 2005, the Clerk of Court's memorandum was replaced by an Administrative Order issued by Chief Judge Carolyn King. "The order applies to [the Fifth Circuit's] nine District Courts and to litigants and their counsel." *See* July 8, 2005 Administrative Order, attached to this Ruling. The Administrative Order instructs that district courts should treat cases subject to transfer under the RIDA as "petitions for review" and must "provide the parties an opportunity to stipulate to, or brief the propriety of, the transfer order." Only "[i]f the District Court concludes all or a portion of a case is subject to transfer, the District Court shall issue a transfer order to the appropriate Court of Appeals characterizing the action as a 'petition for review.'" While not expressly stating that district courts are empowered to enter stays in cases under the RIDA, the Administrative Order clearly contemplates that the district courts will do just that. Paragraph 4 provides as follows: "Any stay issued previously, and not terminated by the District Court, shall remain in place during and after transfer. The Government may move in

the Court of Appeals to vacate the stay, if appropriate."

In this case, the Court was faced with what appeared to be a claim of unlawful detention under *Zadvydas*. Respondents cannot dispute that the Court has jurisdiction over this type of claim. Further, even if Aaloul's case involved issues of deportation or removal that now must be addressed by the appropriate court of appeals, this Court must abide by the Fifth Circuit's directive to engage in a review of the clams prior to determining whether transfer was appropriate. Under these circumstances, the Fifth Circuit Court of Appeals expects district courts to enter a stay if necessary to preserve the status quo.[1] That is what was done in this case.

### B. Merits of Aaloul's Claims

Having addressed its jurisdiction, the Court now turns to an evaluation of the merits of Aaloul's claims. The only relief sought in Aaloul's habeas petition was that he be released from custody pending his removal from the United States. In his Motion to Reopen, Aaloul asserted that he had been re-arrested only because Respondents had obtained a dismissal of his habeas petition. Finally, in his latest filing, a motion for default judgment, Aaloul argues that Respondents cannot prove that he will be removed in the immediately foreseeable future. Therefore, he asks this Court to grant his habeas petition, order his immediate release, and issue preliminary and permanent injunctive relief preventing Respondents from "further unlawful detention" of him.

---

[1]The Court rejects Respondents' contention that this Court could not enter a temporary stay of deportation because the requirements of Federal Rule of Civil Procedure 65 were not met. The stay in this matter was entered, *sua sponte*, by this Court, not at the motion of a party, and Respondents were informed ahead of time that the stay would be entered and then given notice immediately upon its issuance. For the same reasons addressed above, it is within the Court's discretion to enter a stay, under the circumstances of this case, to enforce its own order setting an evidentiary hearing.

Respondents have filed their own Motion to Dissolve Temporary Restraining Order and Dismiss. With a memorandum in support of their motion, Respondents have presented the Declaration of an Atlanta Field Office Deportation Officer, Ramey Billeyh. Billeyh explains how Aaloul's release mistakenly occurred. Aaloul's file was reviewed by the Office of Detention and Removal Operations ("HQDRO"). HQDRO ordered Aaloul's release pending removal, apparently unaware that "an authorization to return had been received from the Israeli Consulate on March 25, 2005, which is the equivalent of a travel document." A release notification was signed on April 19, 2005, and Aaloul was released under supervision on April 27, 2005.

However, on May 19, 2005, Pablo Campos, a employee of the HQDRO travel document unit, contacted the Atlanta Field Office and explained that Aaloul should not have been released because the equivalent of a travel document was available. With Aaloul's return to the Palestinian Territories to be scheduled in the next 3-4 weeks, ICE sought to find, detain, and prepare Aaloul for removal.

Deporation Officer Bridget Bice has also provided a declaration to the Court. She explains that she took Aaloul into custody on June 9, 2005, and transported him to the North Charleston County Detention Center in Charleston, South Carolina. She denies that she or any agent in her presence ever informed Aaloul that he was previously released in order to get his habeas petition dismissed by this Court.[2]

Based upon the evidence provided, the Court finds no need to conduct an evidentiary hearing. Aaloul's removal from the United States is scheduled for next week. There is more

---

[2]While this is an issue of fact, the Court need not have an evidentiary hearing. Although the Court would be disturbed to learn that an ICE agent made such a statement, the evidence shows that Aaloul was properly taken into custody pending his imminent removal.

than a significant likelihood of his removal in the reasonably foreseeable future; his removal is imminent. He may be properly held in confinement until his removal. *See Zadvydas*, 533 U.S. at 701. Therefore, Aaloul has no grounds for relief.

## III. Conclusion

For the foregoing reasons, Respondents' Motion to Dissolve Temporary Restraining Order and Dismiss [Doc. No. 52] is GRANTED IN PART AND DENIED IN PART. To the extent that Respondents argue that this Court lacks jurisdiction to enter a stay to preserve the status quo in this case, their motion is DENIED. Respondents' motion is otherwise GRANTED. Petitioner's petition for writ of *habeas corpus* is DISMISSED WITH PREJUDICE, and the temporary restraining order [Doc. No. 50] issued by this Court on July 12, 2005, is hereby DISSOLVED.

The Court further finds that Petitioner's Motion to Default [Doc. No. 51] is DENIED.

Because no evidentiary hearing will be held, Respondents' Motion for Expedited Hearing [Doc. No. 53] is DENIED AS MOOT.

MONROE, LOUISIANA, this 15 day of July, 2005

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

# UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

July 8, 2005

ADMINISTRATIVE ORDER

The Real ID Act of 2005 (the Act), Pub. L. No. 109-13, 119 Stat 231 (May 11, 2005), makes critical changes in the way criminal aliens must challenge deportation, removal and exclusion orders.

This Administrative Order establishes procedures under the Act for transferring the habeas petitions described above from the District Courts to the Fifth Circuit. The order applies to our nine District Courts and to litigants and their counsel.

1. Those cases subject to transfer under the Act must be considered as petitions for review and must be transferred to the Circuit Court of Appeals where the Immigration Judge concluded proceedings. Because there may be complex issues involved, District Judges should provide the parties an opportunity to stipulate to, or brief the propriety of, the transfer order.

2. If the District Court concludes all or a portion of a case is subject to transfer, the District Court shall issue a transfer order to the appropriate Court of Appeals characterizing the action as a "petition for review."

3. The transfer order should indicate: a) the transfer is pursuant to the Real ID Act; b) if there is a final order from the BIA; c) where the Immigration Judge concluded the proceedings; d) to which Court of Appeals the case should be transferred; and e) the petitioner's Alien Number (the eight-digit number preceded by the letter A).

4. Any stay issued previously, and not terminated by the District Court, shall remain in place during and after transfer. The Government may move in the Court of Appeals to vacate the stay, if appropriate.

5. The District Court clerks must transmit a paper copy of the entirety of the available record to the Court of Appeals contemporaneous with transmission of the transfer order. In a situation where only part of the habeas corpus petition is eligible for transfer, the District Court must forward the portion of the District Court record relating to the petitioner's deportation, removal or exclusion.

6. No later than 14 days after the Court of Appeals dockets the case, the parties shall inform this court's clerk whether the

record transmitted by the District Court is sufficient for purposes of the petition for review, or whether additional documents are necessary.

/s/Carolyn Dineen King
Chief Judge